# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2026

Lyle W. Cayce
Clerk

No. 25-40802

Apple Inc.,

*Appellant*,

*versus*

Key Patent Innovations, Ltd.; Malikie Innovations,
Ltd.,

*Plaintiffs—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:25-MC-6

Before Richman, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:*

This case concerns a discovery dispute under 28 U.S.C. § 1782. Plaintiffs-Appellees Key Patent Innovations and Malikie Innovations (collectively, Malikie) are European entities engaged in ongoing patent infringement litigation against Xiaomi, a Chinese entity, in Germany and India. Incident to these foreign proceedings, Malikie sought and obtained a

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

subpoena in the Eastern District of Texas commanding Blackberry to produce certain patent licensing agreements (the A-B Agreements) that Blackberry previously entered with third parties, including Apple. Blackberry then notified Apple that it would be obliged to disclose the A-B Agreements.

Apple appeared in the district court and requested a protective order commensurate with confidentiality protections the A-B Agreements contain. Apple was particularly concerned about Xiaomi, a major competitor, gaining access to the business-sensitive terms contained in the A-B Agreements. Despite Apple's concerns, the magistrate judge determined based on German and Indian law that both Xiaomi's outside litigation counsel *and* Xiaomi's in-house counsel must be permitted to review the A-B Agreements, irrespective of their confidentiality protections. Apple objected to the magistrate judge's decision. The district court reviewed Apple's objections through the lens of a clear-error standard and fully adopted the magistrate judge's order. Apple contests the deferential standard of review employed by the district court, and contends that, regardless of the proper standard, the district court erred in declining to enforce the A-B Agreements' confidentiality provisions. We affirm in part and reverse in part.

## I.

The very condensed background of this dispute is this: Blackberry obtained patents protecting its intellectual property and subsequently licensed those patents to Apple via the A-B Agreements. Later, Blackberry assigned its rights in multiple patents, including the patents covered by the A-B Agreements, to Malikie. Now Malikie alleges that Xiaomi is infringing these patents and has sued Xiaomi for patent infringement in Germany and India.

No. 25-40802

In aid of its foreign actions against Xiaomi, Malikie filed a 28 U.S.C. § 1782 application in the Eastern District of Texas to obtain discovery from Blackberry for use in the foreign proceedings.[1] Specifically, Malikie sought discovery for use in two proceedings in the Munich I District Court of Germany and a third action pending in the High Court of Delhi in India. The subpoena Malikie sought requested:

> All agreements in BlackBerry's possession, custody or control that include a grant of a license, covenant, or other rights to any BlackBerry patents relating to any Cellular Standard with respect to any wireless handsets to which Teletry is a party or that were negotiated by Teletry on BlackBerry's behalf;[2] any related agreements or side letters contemporaneously executed by BlackBerry or Teletry; and any additional documents to the extent necessary and sufficient to show the royalties to be paid under such agreements.

The § 1782 application was assigned to a magistrate judge, who granted the request and ordered Blackberry to produce responsive documents to Malikie within thirty days of service of the subpoena. Malikie and Blackberry then jointly moved for a stipulated protective order governing disclosure of documents encompassed by the subpoena. The magistrate judge entered the requested order, which authorized Malikie to use the patent licensing agreements produced by Blackberry—including the A-B Agreements—in

---

[1] 28 U.S.C. § 1782(a) provides, in relevant part, that

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person . . . .

[2] Teletry is the affiliate through which BlackBerry licensed these patents.

3

No. 25-40802

"any current or future proceeding anywhere in the world between Malikie and Xiaomi" in which the patent licensing terms were at issue.

Blackberry thereafter notified Apple that it intended to disclose the A-B Agreements pursuant to Malikie's subpoena and subject to the stipulated protective order. Apple objected, arguing that the level of confidentiality contemplated by the protective order was not "consistent with the level of confidentiality required by the licensing agreements themselves." Specifically, the A-B Agreements provide that the parties may not:

> disclose such terms and particulars to any Third Party except: . . . (ii) as may be required by applicable law, regulation[,] or order of a governmental authority of competent jurisdiction, [or] (iii) during the course of litigation so long as the disclosure of such terms and conditions is subject to the same restrictions as is the confidential information of the other litigating parties, such restrictions are embodied in a court-entered protective order limiting disclosure to outside counsel[,] and such disclosing party provides the other party written notice . . . prior to such disclosure[.]

Unable to negotiate a satisfactory resolution with Blackberry and Malikie, Apple appeared in the district court and moved to quash the subpoena. In the alternative, Apple requested a supplemental protective order to enforce the A-B Agreements' confidentiality provisions and restrict their disclosure to outside counsel only—*i.e.*, to prevent Xiaomi's in-house counsel from viewing them. Apple also sought to limit their production only to the German and Indian proceedings.

The magistrate judge denied Apple's request to quash. The court found that the agreements were relevant because they "constitute an example of licensure which the parties in the Foreign Proceedings intend to point to in order to show [licensing fairness] compliance . . . or a lack thereof."

No. 25-40802

The magistrate judge also declined to enforce the A-B Agreements' confidentiality provisions, though the court agreed to limit their use solely to the German and Indian proceedings. In particular, the court denied Apple's request to limit the A-B Agreements' production to outside counsel only. The magistrate judge reasoned that though the outside-counsel restriction was one of the confidentiality safeguards for which Apple and Blackberry had contracted, the A-B Agreements' confidentiality provisions expressly do not apply where "applicable law" supersedes them. And the court determined that was "precisely the situation at play" because "under both German and Indian law, the parties to a dispute—including . . . in-house counsel—have a right to inspect documents." As "Xiaomi has refused" to waive that right, the magistrate judge concluded that the "default law of Germany and India applies." The upshot of the court's ruling was that the A-B Agreements, despite their express contrary language, could be disclosed beyond outside litigation counsel to Xiaomi's in-house counsel.

Apple objected to the magistrate judge's order. Much of the parties' focus in the district court was on framing the dispute: Apple argued that the magistrate judge's denial of Apple's motion was a dispositive ruling because it fully addressed the relief Apple sought. Consequently, Apple argued that the district court should conduct a *de novo* review of the ruling. Malikie countered that an order from a magistrate judge on a discovery matter should not be considered dispositive. The district court overruled Apple's objections and fully adopted "the reasoning provided within the [magistrate judge's] [o]rder," concluding that Apple's objections failed to show that the order "was clearly erroneous or contrary to law." This appeal followed.

## II.

The scope of our review of a district court's order adopting a magistrate judge's ruling on a § 1782 application turns on whether the initial

ruling was dispositive or non-dispositive. We examine *de novo* the district court's treatment of the underlying ruling. *See Davidson v. Ga.-Pac., L.L.C.*, 819 F.3d 758, 762–63 (5th Cir. 2016); *see* 28 U.S.C. § 636(b)(1)(A) (enumerating specific dispositive matters that may not be determined by magistrate judges). Recommendations issued by a magistrate judge in dispositive matters are properly reviewed by the district court *de novo*, whereas orders issued by a magistrate judge in non-dispositive matters are reviewed for clear error. *Davidson*, 819 F.3d at 762. To determine whether the district court correctly assessed the magistrate judge's ruling, we look to whether the motion decided was the "functional equivalent" of one of the listed dispositive motions in § 636(b)(1)(A). *Id.* at 764 (concluding that a motion to remand to state court is dispositive); *see CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807 (9th Cir. 2022) (concluding that the denial of a § 1782 application was dispositive because it "effectively denie[d] 'the ultimate relief sought' by a party" (quotation omitted)).[3]

When, as here, the district court has adopted the magistrate judge's order without further comment, we review the magistrate judge's order as if

---

[3] In the context of this § 1782 action, whether the magistrate judge's order was dispositive does not implicate our jurisdiction to consider the appeal. We assess § 1782 appeals through the filter of the collateral order doctrine, which allows that we have jurisdiction "over a nonfinal order when it is (1) conclusive as to the subject addressed, (2) resolves an 'important question[] completely separate from the merits,' and (3) is 'effectively unreviewable on appeal from a final judgment.'" *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 978 F.3d 968, 973 (5th Cir. 2020) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). Those considerations are met here, even if the magistrate judge's order was nondispositive in nature. *Compare id.* at 972–73 (holding that this court lacked jurisdiction over § 1782 appeal when district court had not "conclusively determine[d] whether, and to what extent, discovery might be required"), *with Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 552 (5th Cir. 2012) (concluding that jurisdiction was proper in § 1782 action applying the same standard).

it were the original order of the district court. *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 426 n.1 (5th Cir. 2014). If the order on appeal is dispositive in nature, we review legal questions *de novo* and findings of fact for clear error. *Luther v. John W. Stone Oil Distrib., L.L.C.*, 607 F. App'x 367, 369 (5th Cir. 2015) (per curiam). The district court's application of disputed contractual terms is a question of law that we review *de novo*. *See Three Fifty Mkts., Ltd. v. Argos M M/V*, 166 F.4th 462, 468 (5th Cir. 2026); *In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 578 (5th Cir. 2024). If the magistrate judge's order at issue is non-dispositive, we review the district court's decision to defer to it only for abuse of discretion. *See Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 768 (5th Cir. 2015); *see also La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023) (pretrial discovery orders reviewed for abuse of discretion).

## III.

On appeal, the parties primarily dispute whether the magistrate judge's order denying Apple relief was dispositive and, by extension, whether the district court applied the proper standard in overruling Apple's objections to the order. Apple argues that the order was dispositive because it conclusively resolved Apple's dispute with Malikie over the disclosure of the A-B Agreements. *See CPC*, 34 F.4th at 804 (holding that denial of § 1782 application was a dispositive ruling). And because the order was dispositive, Apple says it had the "right to plenary review by an Article III judge." *See id.* at 805 (determining that "the district judge should have reviewed the magistrate judge's findings de novo rather than applying the deferential clear-error standard of review"). As that is not what occurred—the district judge merely weighed whether the magistrate judge's order was "clearly erroneous or contrary to law"—Apple asks that we vacate the district court's order and remand for that court to evaluate the magistrate judge's order *de novo*. Malikie agrees the magistrate judge's order resolved its dispute with

Apple but casts the order as merely a non-dispositive discovery ruling, properly evaluated by the district court via a more deferential clear-error standard.

It is not necessary for us to resolve the parties' debate. Based on the record before us, the district court erred by vitiating the provisions contained in the A-B Agreements that would serve to restrict their production in the foreign litigation to outside counsel. Thus, whether we review the underlying order *de novo* (as dispositive or as a question of contract interpretation) or for clear error (as non-dispositive), the same result follows.

As discussed, the A-B Agreements restrict disclosure of their terms to third parties except, as relevant here, "as may be required by applicable law . . . or order of a governmental authority of competent jurisdiction," or "during the course of litigation so long as the disclosure . . . is subject to [certain] restrictions . . . embodied in a court-entered protective order limiting disclosure to outside counsel." The magistrate judge determined that because the "applicable law" of Germany and India gives litigation counsel, as well as their clients, the right to inspect documents, the A-B Agreements had to be disclosed to Xiaomi's in-house counsel. But that interpretation was at best premature. Based on the witness declarations Malikie presented in support of its application, neither the Indian nor German court has yet required Malikie to disclose the A-B Agreements to in-house counsel, and Malikie has not demonstrated that applicable law *requires* such a result.

Malikie's declarant on Indian law, Gitanjali Sharma, avers merely that "the law in India requires parties to file all documents on which it places reliance and that are in its possession at an initial stage in the proceedings." From that unremarkable premise, Sharma goes on to agree with Apple that "parties to a litigation in India can mutually agree to any form of

confidentiality club [*i.e.*, protective order] *including one which does not include in-house members*." Sharma states that "the High Court of Delhi routinely constitutes confidentiality clubs in India which include[] in-house representatives," and "*has allowed* such a requirement" when a party demands such access. Well enough, but nowhere does Sharma state that Indian law requires such an arrangement; her affidavit simply sketches other cases in which the Indian court has blessed the inclusion of in-house counsel in "confidentiality clubs." This testimony falls short of showing that "applicable law" requires the A-B Agreements' confidentiality protections to give way at this juncture.

Malikie's declarant on German law, Marina Wehler, is concededly more definitive. Wehler avers that "German constitutional law and the principles of civil procedure" require that "all evidence submitted to the court be accessible not only to the party's external counsel but also to at least one natural person representing that party." "As a result, a party cannot rely on documents in a German court if they are disclosed solely to outside counsel on an 'Outside Counsel Eyes Only' . . . basis." Even then, Wehler states that "such a restriction is permissible . . . where all parties to the proceedings expressly agree and thereby waive their constitutional right to personal access." And, further parsing Wehler's testimony, it is unclear how local German procedure would actually impact production and use of the A-B Agreements in that forum given the district court's fashioning of the protective order here. At least at this juncture, based on the record before us, we do not discern that "applicable law" unequivocally vitiates the A-B Agreements' confidentiality protections. The district court thus erred in applying the A-B Agreements' "applicable law" clause to that effect.

More apt for resolving Malikie's § 1782 action is the A-B Agreements' own delineation of how the agreements are properly to be produced "during

the course of litigation." Neither the magistrate judge nor the district court explored how this clause operates in the context of this case. The clause delineates the parameters within which the A-B Agreements may be produced during litigation, including, as germane to this dispute, restricting production to outside counsel only. Lacking a definitive mandate—from either foreign court or governing law—that the A-B Agreements must be shared with Xiaomi's in-house counsel, the district court had no valid ground to ignore this clause. Put differently, Malikie has shown that under applicable law, it *might* be required to produce the A-B Agreements to Xiaomi's in-house counsel—not that it *will* be.

Given the uncertainty whether such production was "*required* by applicable law," the district court should have construed the A-B Agreements to give force to both contractual provisions. It was error to override one clause with the other and thereby deny Apple's request for a modified protective order limiting disclosure of the A-B Agreements to outside counsel in the ongoing litigation.[4]

This is so at least as the case now stands. If, for instance, one of the foreign courts were to hold that the A-B Agreements must be disclosed to Xiaomi, as well as its outside counsel, regardless of the terms of the A-B Agreements, then Malikie may return to the district court and seek modification of the protective order consonant with those terms. Our holding is a limited one: Because Malikie has shown only that it *might* be

_____

[4] We reject Malikie's contention that the magistrate judge's order itself constituted "applicable law" or "order of a governmental authority of competent jurisdiction" requiring production of the A-B Agreements. It cannot be correct that the district court's own order meets the A-B Agreements' exception for "order[s] of a governmental authority of competent jurisdiction." Given that no other government authority, foreign or otherwise, has yet ordered disclosure, Malikie's argument collapses into a circular request to affirm the district court's order of disclosure based solely on the order under review.

required to produce the A-B Agreements to in-house counsel, the "applicable law" provision does not override the "course of litigation" provision. We have no occasion to consider whether, as Apple contends, the "course of litigation provision" would override the "applicable law" provision in the event a foreign court actually orders such disclosure, and we accordingly make no judgment on that issue today.

## IV.

In light of the foregoing, we reverse the district court's order adopting the magistrate judge's ruling as to Apple's request for a supplemental protective order to the extent that the district court did not limit the disclosure of the A-B Agreements to outside counsel in the foreign proceedings. The district court's order is otherwise affirmed.

AFFIRMED in part; REVERSED in part.